# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NATHANIEL FREDERICK RAEDER, ) | |
| ) | |
| Debtor. ) | Case No. 08-189 |
| _____ ) | |
| ) | |
| JEAN J. HARROLD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 08-47 |
| ) | |
| NATHANIEL FREDERICK RAEDER ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Jean J. Harrold claims that her son, Nathaniel Raeder (the "Debtor"), owes her $264,193.70. She seeks to have this debt excepted from the Debtor's Chapter 7 discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6), and she requests that the court deny the Debtor a discharge pursuant to § 727(a)(4). This case is before the court on Ms. Harrold's motion for summary judgment.

For the reasons stated herein, the court will deny the motion.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no

1

genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

Before 2003, Ms. Harrold paid for her daily maintenance and household expenses through a checking account that she maintained at Huntington National Bank of Clarksburg. In 2003, Ms. Harrold broke her shoulder. As a result, she couldn't write or move around well, and she delegated the responsibility of taking care of her household and personal expenses to her adult son, the Debtor. To accomplish this task, she gave the Debtor authority to sign checks to be paid from her checking account.

From time to time, Ms. Harrold made cash gifts to her children. The Debtor estimates that she gave one of his siblings about $250,000. The Debtor also maintains that one of the reasons Ms. Harrold allowed him control over her checking account was so that she could make similar gifts to him – to "even out" what she was giving to her children. Ms. Harrold admitted that the Debtor had always been strapped for money, and that she had always helped him out by giving him "a couple hundred here and a couple hundred there and a couple hundred someplace else." Of the $264,193.70 purported to have been withdrawn from her account by the Debtor between 2003 and 2007, the Debtor states that about $75,000 of that amount represents expressly authorized withdrawals that

were for the purpose of establishing his "handy-man" business. In her deposition, Ms. Harrold states that she is not mad that the Debtor took money for his personal use out of her account: "The only thing that made me mad was that there was so damn much of it going up his nose [due to illegal drug use]."

Even though Ms. Harrold gave the Debtor authority to write checks from her bank account, Ms. Harrold retained legal ownership over the account. Bank statements were mailed to her at her home address. After giving the Debtor authority to write checks out of her account in 2003, Ms. Harrold stated that it was "probably true" that she did not look at her bank statements again until 2007. When she began to review her bank statements in 2007, she came to the conclusion that the Debtor had exceeded his authority in withdrawing money from her account for his personal use.

### III. DISCUSSION

Ms. Harrold argues that the Debtor owes her $264,193.70 due to his unauthorized use of her checking account. This amount, Ms. Harrold contends, should be excepted from the Debtor's discharge (should he be granted one), on the basis that the Debtor obtained money from her by fraudulent means; by acts of defalcation while acting in a fiduciary capacity, embezzlement or larceny; or by acting willfully and maliciously to injure her property. 11 U.S.C. §§ 523(a)(2)(A), (4), (6). Ms. Harrold also argues that the court should deny the Debtor a Chapter 7 discharge on the grounds that he knowingly and fraudulently made a false oath or account in connection with his case when he improperly listed a $39,830 unsecured debt owed to Huntington Bank when no such unsecured debt existed. § 727(a)(4)(A).

As the party asserting a causes of action arising under § 523(a) and § 727(a), Ms. Harrold bears the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279 (1991). When considering the applicability of an exception to discharge under § 523(a), or whether to deny discharge under § 727(a), the court is to construe the statute narrowly in favor of the debtor to protect the primary purpose of to Bankruptcy Code, which is to provide a debtor with a financial fresh start. *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999); *Wilson v. Key (In re Key)*, No. 97-1408, 1997 U.S. App. LEXIS 34604, at *3 (4th Cir. Oct. 2, 1997).

**A.    Section 523(a)(2)(A): False Pretenses, False Representations, Actual Fraud**

Ms. Harrold contends that the Debtor fraudulently took money from her personal checking

3

account to fund, among other things, his illegal drug use. The Debtor's use of her money, she argues, is beyond the scope of the Debtor's authority to use the money in her checking account to pay for her household and living expenses.

Section 523(a)(2)(A) excepts from discharge any debt "for money . . . to the extent obtained, by-- (A) false pretenses, a false representation, or actual fraud . . . ."

Not all debts incurred as a result of fraud fall within this exception to discharge; rather, this exception only includes those "debts in which the debtor used fraudulent means to obtain money . . . ." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007). The intent of § 523(a)(2) is "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Id.* at 219-20.

The terms "false pretenses," "false representation," and "actual fraud" are to be interpreted according to the common understanding of those terms at the time § 523(a)(2)(A) was enacted. *E.g.*, *Field v. Mans*, 516 U.S. 59, 69 (1995) ("The operative terms in § 523(a)(2)(A) . . . carry the acquired meaning of terms of art. They are common-law terms, and . . . they imply elements that the common law has defined them to include."). What Congress meant when it used the terms can be derived from the generally shared common law, as set forth in *Restatement (Second) of Torts* (1976), which was published shortly before Congress passed the 1978 Bankruptcy Code. *Field*, 516 U.S. at 70-73. *See also Biondo*, 180 F.3d at 134 ("[W]e will follow the Supreme Court's lead and look to the Restatement to determine the elements required to prove that claim."). To define "actual fraud" the Supreme Court looked to the definition of "fraudulent misrepresentation" under the Restatement, which defines the tort as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts* § 525 (1976).

Thus, under the Restatement, "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Biondo*, 180 F.3d at 134. Regarding a debtor's misstatement of intention, it is only "fraudulent if he does not have that

4

intention at the time he makes the representation." *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting *Restatement (Second) of Torts* § 530(1) (1976)).

In this case, Ms. Harrold has alleged that the Debtor's fraudulent misrepresentation is his expenditure of funds in her bank account for his personal use when their agreement was that the Debtor would only use the account funds to pay for her household and personal living expenses, and other expressly authorized transactions. In fact, it appears that the Debtor fulfilled his duties under the alleged agreement. From 2003 to 2007 the Debtor paid Ms. Harrold's household and living expenses, and wrote other checks under Ms. Harrold's express authorization. Although Ms. Harrold alleges that the Debtor exceeded his authority by writing checks on her account for unauthorized expenditures, she has not alleged that she was tricked by debtor into giving him money through a fraudulent misrepresentation. *See id.* at 787 ("If, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation . . . . If he did so intend at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made."). In short, the record on summary judgment does not demonstrate that Debtor made a misrepresentation to Ms. Harrold in order to obtain the authority to write checks from her bank account, and, therefore, Ms. Harrold has not established her claim under 11 U.S.C. § 523(a)(2)(A).

**B.     Section 523(a)(4): Defalcation, Embezzlement, Larceny**

Ms. Harrold contends that the Debtor committed acts of defalcation, embezzlement, and/or larceny by using his authority to withdraw money from her bank account for his unauthorized, personal use.

Section 523(a)(4) excepts debts from discharge that arise out of "fraud or defalcation while acting in a fiduciary capacity" and debts based on embezzlement or larceny. 11 U.S.C. § 523(a)(4).

In *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), the court defined the tort of defalcation:

> Defalcation is "the failure to meet an obligation" or "a nonfraudulent default." To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of . . . 'embezzlement' or even 'misappropriation.'" Thus, negligence or even an innocent mistake which results in misappropriation or failure to account is sufficient.

*Id.* at 811; *see also Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997) ("'[A] 'defalcation'

5

for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'") (citation omitted).

Importantly, by statute, an act of defalcation is only excepted from discharge when the defalcation is committed by a debtor acting in a fiduciary capacity. The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Under the federal common law, the term "fiduciary" is limited to instances involving express or technical trusts. *Id.* In an express or technical trust, "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds . . . ." *Id.* at *8.

While Ms. Harrold is clear in her deposition that she entrusted the Debtor with the authority to issue checks written on her bank account, there is no indication that an express or technical trust existed between Ms. Harrold and the Debtor. Ms. Harrold retained legal title to the funds in her bank account and continued to receive the monthly bank statements. Also, under West Virginia law, "[n]o declaration of trust of any personal property, without consideration, shall be valid unless it be in writing, signed by the person who creates such trust or by his agent." W. Va. Code § 36-1-6. No such writing has been presented to the court. In short, the record before the court on summary judgment fails to establish that the Debtor was acting in a fiduciary capacity to Ms. Harrold; thus, the court cannot conclude that the Debtor committed any acts of defalcation.

For the purpose of § 523(a)(4), "embezzlement" is defined as the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citation omitted). In contrast, "larceny" occurs under § 523(a)(4) if " the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991). "Embezzlement" differs from "larceny" in that when money is embezzled, "the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." 4 *Collier on Bankruptcy* ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2008).

Here, Ms. Harrold has also fallen short of demonstrating embezzlement or larceny in the context of her summary judgment motion. The Debtor stated in his affidavit that Ms. Harrold

6

intended the Debtor to personally benefit from the funds in her account, and, in fact, had given another of her children up to $250,000. In her deposition, Ms. Harrold stated that she made cash gifts to "even out" what she was giving to her children. The allegedly unauthorized withdrawals by the Debtor total $264,193.70, which is roughly consistent with amounts purported to have been received by the Debtor's sibling. Also, according to the Debtor, Ms. Harrold expressly authorized expenditures of up to $75,000 to start his "handy-man" business. Ms. Harrold herself stated in her deposition that she would give the Debtor several hundred dollars at a time, and when questioned about the Debtor's allegedly unauthorized withdrawals, she stated that "[t]he only thing that made [her] mad was that there was so damn much of [her money] going up [the Debtor's] nose [due to illegal drug use]." Additionally, it does not appear as if the Debtor was concealing the fact that he was withdrawing money from his mother's account. Ms. Harrold maintained legal rights in the account, and received the monthly bank statements. In short, construing all inferences in favor of the Debtor, it appears that Ms. Harrold intended to make gifts of at least some of the money to the Debtor, which is inconsistent with her claims for embezzlement or larceny.

**C.      Section 523(a)(6) Willful and Malicious Injury**

Ms. Harrold alleges that the Debtor's allegedly unauthorized use of her checking account constitutes a willful and malicious injury to her property, and, as such, the Debtor's unauthorized withdrawals are excepted from his anticipated bankruptcy discharge.

Section 523(a)(6) of the Bankruptcy Code provides that a discharge in bankruptcy does not apply to any debt that arises from the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The test is conjunctive; thus, a willful injury by itself is insufficient to support a cause of action unless the act was also done maliciously. *E.g.*, *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991) (noting that willful and malicious are distinct elements of 523(a)(6) exception to discharge). Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau v. Geiger*, 523 U.S. 57, 60 (1998). As stated by the Court of Appeals for the Fourth Circuit:

> [Section] 523(a)(6) applies only to "acts done with the actual intent to cause injury."
> 
> Section 523(a)(6) is not satisfied by negligent, grossly negligent or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not

7

necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "[N]ondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

*Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006).

Thus, for an injury to be "willful," the debtor must have intended the consequences of the debtor's act. More specifically, intentional conduct occurs when a debtor knows that the consequences flowing from the complained of acts are certain, or are substantially certain to occur. *E.g.*, *Barclays American/Business Credit., Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (adopting definition of "intentional" as stated in *Restatement (Second) of Torts* § 8A, comment b (1965)). For an act to be "malicious" the act must be targeted at the plaintiff, at "least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* at 881. A "malicious act" is "[a]n intentional, wrongful act performed against another without legal justification or excuse." *Black's Law Dictionary* 977 (8th ed. 2004). Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue. *E.g.*, *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985) ("Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6).").

In sum, for a debt to be excepted from a debtor's discharge pursuant to § 523(a)(6), the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious.

There is no doubt that the Debtor's allegedly unauthorized use of the funds in Ms. Harrold's bank account would constitute an injury to her property, and if done willfully and maliciously, such use would fall within the § 523(a)(6) exception to discharge. The use of bank account funds by itself, however, is not willful and malicious. Some use may be innocent or technical, such as an unauthorized assumption of dominion without wilfulness or malice. There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged. In such circumstances, "what is done is a tort, but not a wilful and malicious one." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934).

The facts presented to the court on summary judgment in this case fall short of demonstrating that the Debtor willfully and maliciously injured Ms. Harrold's property when he purportedly used the funds in her bank account to his personal use. As stated in the Debtor's affidavit, and as corroborated by Ms. Harrold in her deposition, Ms. Harrold intended to use some of the funds in her account to benefit her children, including the Debtor. Ms. Harrold even authorized the Debtor to make several cash gifts to his siblings out of her account. No indication yet exists that the Debtor intended to financially ruin his mother. While the Debtor's use of the funds in Ms. Harrold's bank account were likely willful acts (assuming such acts were unauthorized), the evidence does not show that the Debtor's actions were malicious.

**D.     Section 727(a)(4): Denial of Discharge**

Ms. Harrold seeks to deny the Debtor a discharge of any of his debts based on the Debtor's statement in his bankruptcy schedules that he owed Huntington Bank a $39,830 unsecured debt, when no such unsecured debt was owed. The Debtor did owe Huntington Bank about $40,000 in secured debt, which he properly listed on his schedules of secured debts.

Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . (4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account . . . ." 11 U.S.C. § 727(a)(4)(A). "[T]o deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

Here, Ms. Harrold has failed to demonstrate on summary judgment that the Debtor made the false statement that he owed Huntington Bank an unsecured debt of $39,830 with a fraudulent intent, or that such statement related materially to his bankruptcy case.

## IV. CONCLUSION

For the above-stated reasons, the court will deny Ms. Harrold's motion for summary judgment. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.