# IN THE UNITED STATE BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NATHANIEL FREDERICK RAEDER, ) | |
| ) | |
| Debtor. ) | Case No. 08-189 |
| ) | |
| ) | |
| JEAN J. HARROLD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 08-47 |
| ) | |
| NATHANIEL FREDERICK RAEDER ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Jean J. Harrold claims that her son, Nathaniel Raeder (the "Debtor"), owes her $264,193.70. She seeks to have this debt excepted from the Debtor's Chapter 7 discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6), and she requests that the Court deny the Debtor a discharge pursuant to § 727(a)(4). For the reasons stated herein, the court will dismiss Ms. Harrold's complaint.

### I. BACKGROUND

Before 2003, Ms. Harrold paid for her daily maintenance and household expenses through a checking account that she maintained at Huntington National Bank of Clarksburg. In 2003, Ms. Harrold broke her shoulder. As a result, Ms. Harrold could not write or move around well, and she delegated the responsibility of taking care of her household and personal expenses to her adult son, the Debtor. To accomplish this task, Ms. Harrold gave the Debtor authority to sign checks to be drawn on her checking account at Huntington National Bank.

From time to time, Ms. Harrold made cash gifts to her children. The Debtor estimates that she gave one of his siblings approximately $250,000. In fact, Nancy McKenzie, the Debtor's sister, received a gift of approximately $125,000 from Ms. Harrold to purchase a home, in addition to proceeds received from the sale of real property jointly held by Ms. Harrold and Ms. McKenzie. The Debtor maintains that one of the reasons Ms. Harrold allowed him control over her checking account was so that she could make similar gifts to him – to "even out" things between himself and Ms. McKenzie. Ms. Harrold admitted that the Debtor had always been strapped for money, and that she had always helped him out by giving him "a couple hundred here and a couple hundred there and a couple hundred someplace else." Of the $264,193.70 purported to have been withdrawn from her account by the Debtor between 2003 and 2007, the Debtor states that about $75,000 of that amount represents expressly authorized withdrawals that were for the purpose of establishing his "handy-man" business. In her deposition, Ms. Harrold states that she is not mad that the Debtor took money for his personal use out of her account: "The only thing that made me mad was that there was so damn much of it going up his nose [due to illegal drug use]."

Even though Ms. Harrold gave the Debtor authority to write checks from her bank account, Ms. Harrold retained legal ownership over the account. Bank statements were mailed to her at her home address. After giving the Debtor authority to write checks out of her account in 2003, Ms. Harrold stated that it was "probably true" that she did not look at her bank statements again until 2007. When she began to review her bank statements in 2007, she came to the conclusion that the Debtor had exceeded his authority in withdrawing money from her account for his personal use.

## II. DISCUSSION

Ms. Harrold contends that the Debtor took $264,193.70 from her by fraudulent means; by acts of defalcation while acting in a fiduciary capacity, embezzlement, or larceny; or by acting willfully and maliciously to injure her property. 11 U.S.C. §§ 523(a)(2)(A), (4), (6). Ms. Harrold also argues that the court should deny the Debtor a Chapter 7 discharge on the grounds that he knowingly and fraudulently made a false oath or account in connection with his case when he improperly listed a $39,830.00 unsecured debt owed to Huntington National Bank when no such unsecured debt existed. § 727(a)(4)(A).

As the party asserting causes of action arising under § 523(a) and § 727(a), Ms. Harrold bears the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279 (1991). When considering the applicability of an exception to discharge under § 523(a), or whether to deny discharge under § 727(a), the court is to construe the statute narrowly in favor of the debtor to protect the primary purpose of the Bankruptcy Code, which is to provide a debtor with a financial fresh start. *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

A. Section 523(a)(2)(A): False Pretenses, False Representations, Actual Fraud

Ms. Harrold contends that the Debtor fraudulently took money from her personal checking account to fund, among other things, his illegal drug use. The Debtor's use of her money, she argues, is beyond the scope of his authority to use the money to pay for her household and living expenses.

Section 523(a)(2)(A) excepts from discharge any debt "for money . . . to the extent obtained, by -- (A) false pretenses, a false representation, or actual fraud . . . ."

Not all debts incurred as a result of fraud fall within this exception to discharge; rather, this exception only includes those "debts in which the debtor used fraudulent means to obtain money . . . ." *Nunnery* v. *Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007). The intent of § 523(a)(2) is "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Id.* at 219-20.

The terms "false pretenses," "false representation," and "actual fraud" are to be interpreted according to the common understanding of those terms at the time § 523(a)(2)(A) was enacted. *E.g., Field* v. *Mans*, 516 U.S. 59, 69 (1995) ("The operative terms in § 523(a)(2)(A) . . . carry the acquired meaning of terms of art. They are common-law terms, and . . . they imply elements that the common law has defined them to include."). What Congress meant when it used the terms can be derived from the generally shared common law, as set forth in *Restatement (Second) of Torts* (1976), which was published shortly before Congress passed the 1978 Bankruptcy Code. *Field*, 516 U.S. at 70-73. *See also Biondo*, 180 F.3d at 134 ("[W]e will follow the Supreme Court's lead and look to the Restatement to determine the elements required to prove that claim."). To define "actual fraud" the Supreme Court looked to the definition of "fraudulent misrepresentation" under the Restatement, which defines the tort as:

3

> One who fraudulently makes a misrepresentation of fact, opinion, intention, or law for the purpose of inducing another to act or to refrain from action in reliance upon it, subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts* § 525 (1976).

Thus, under the Restatement, "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Biondo*, 180 F.3d at 134. Regarding a debtor's misstatement of intention, it is only "fraudulent if he does not have that intention at the time he makes the representation." *Palmacci* v. *Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting *Restatement (Second) of Torts* § 530(1) (1976)).

In this case, Ms. Harrold has alleged that the Debtor's fraudulent misrepresentation is his expenditure of funds from her bank account for his personal use when their agreement was that the Debtor would only use the account to pay for Ms. Harrold's household and personal living expenses, and other expressly authorized transactions. In fact, the Debtor fulfilled his duties under the alleged agreement. From 2003 to 2007, the Debtor paid Ms. Harrold's expenses and wrote other checks under Ms. Harrold's express authorization. Although Ms. Harrold alleges that the Debtor exceeded his authority by writing checks on her account for unauthorized expenditures, she has not alleged that she was tricked by the Debtor into giving him money through a fraudulent misrepresentation. *Id.* at 787 ("If, *at the time he made his promise*, the debtor did not intend to perform, then he has made a false representation . . . . If he did so intend at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made.") (emphasis added).

In short, the record does not demonstrate that the Debtor made a misrepresentation to Ms. Harrold in order to obtain the authority to write checks from her bank account. Ms. Harrold expressly gave the Debtor authority to use her checking account to pay her bills in 2003. No evidence suggests that the Debtor did not intend to perform his obligations under the agreement at the time he obtained check writing authority. Moreover, although numerous transactions regarding Ms. Harrold's bank account are in the record, Ms. Harrold has not identified any individual transaction involving a separate act that is actionable under § 523(a)(2)(A). To the contrary, the evidence demonstrates that Ms. Harrold intended to make gifts to the Debtor.

Allowing him use of her bank account was the method by which Ms. Harrold effectuated those gifts. Therefore, Ms. Harrold has not established an essential element of her claim under 11 U.S.C. § 523(a)(2)(A), and this cause of action will be dismissed.

### B. Section 523(a)(4): Defalcation, Embezzlement, Larceny

Ms. Harrold contends that the Debtor committed acts of defalcation, embezzlement, and/or larceny by using his authority to withdraw money from her bank account for his unauthorized, personal use.

Section 523(a)(4) excepts debts from discharge that arise out of "defalcation while acting in a fiduciary capacity" and debts incurred through embezzlement or larceny. 11 U.S.C. § 523(a)(4).

In *Republic of Rwanda* v. *Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), the court defined the tort of defalcation:

> Defalcation is "the failure to meet an obligation" or "a nonfraudulent default." To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of . . . 'embezzlement' or even 'misappropriation.'" Thus, negligence or even an innocent mistake which results in misappropriation or failure to account is sufficient.

*Id.* at 811; *see also Pahlavi* v. *Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997) ("[A] 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'") (citation omitted).

Importantly, by statute, an act of defalcation is only excepted from discharge when the defalcation is committed by a debtor acting in a fiduciary capacity. The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell* v. *Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller* v. *J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Under federal common law, the term "fiduciary" is limited to instances involving express or technical trusts. *Id.* In an express or technical trust, "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds . . . ." *Id.* at *8.

Although Ms. Harrold states that she entrusted the Debtor with the authority to issue checks written on her bank account, there is no indication that an express or technical trust existed between Ms. Harrold and the Debtor. Ms. Harrold retained legal title to the funds in her

5

bank account and continued to receive the monthly bank statements. Also, under West Virginia law, "[n]o declaration of trust of any personal property, without consideration, shall be valid unless it be in writing, signed by the person who creates such trust or by his agent." W. Va. Code § 36-1-6. No such writing has been presented to the court. In short, the record before the court fails to establish that the Debtor was acting in a fiduciary capacity to Ms. Harrold; thus, the court cannot conclude that the Debtor committed any acts of defalcation.

Turning to Ms. Harrold's claim under § 523(a)(4) for embezzlement and larceny, an act of "embezzlement" is defined as the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *Miller* v. *J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citation omitted). In contrast, "larceny" occurs under § 523(a)(4) if "the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991). "Embezzlement" differs from "larceny" in that when money is embezzled, "the original taking of the property was lawful, or with the consent of the owner, but in larceny, the felonious intent must have existed at the time of the taking." 4 *Collier on Bankruptcy* ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2008.)

Here, Ms. Harrold has also failed to meet her burden to prove that the Debtor engaged in either embezzlement or larceny as defined by § 523(a)(4). The record reflects Ms. Harrold's acquiescence to the Debtor's use of her funds to pay personal expenses, having given him "a couple hundred here, and a couple hundred there, and a couple hundred someplace else." Also, Ms. Harrold expressly authorized approximately $75,000 of her funds to be used for the Debtor to start a "handy-man" business, and the record reflects that Ms. Harrold was satisfied with the Debtor's use of her funds, with the exception of his admitted drug use. Finally, there were approximately 800+ checks/counterchecks drawn on Ms. Harrold's account, and Ms. Harrold was not able to establish that any single one represented monies taken wrongfully or with fraudulent intent.

In sum, the Debtor did not commit larceny by withdrawing funds from Ms. Harrold's checking account because: (1) the Debtor had complete, legal access to the funds in the account; and (2) Ms. Harrold expressly gave him permission to use her account funds for his personal use. The court recognizes Ms. Harrold's assertion that the Debtor took advantage of his authority over her bank account by taking too much money for himself, but taking advantage of one's

authority to withdraw money does not mean that the withdraws are wrongful or fraudulent. Thus, in the court's view, the requisite intent relevant to the conduct embraced by § 523(a)(4) has not been established.

Also, the record is insufficient to support a finding of embezzlement as defined by statute. The evidence shows that: (1) Ms. Harrold intended to "even out" the gifting to her two children; (2) she had expressly authorized the Debtor to pay for some of his living expenses out of her account; (3) the Debtor was expressly authorized to use $75,000 for his "handy-man" business; and (4) as the natural object of her bounty, the Debtor could expect to receive some gifts from his mother. Based on these facts, the court cannot conclude that the Debtor acted fraudulently for purposes of embezzling Ms. Harrold's money. Moreover, Ms. Harrold was aware, or should have been aware, of the Debtor's use of her account as he did not conceal the withdrawals on her account from her. In fact, Ms. Harrold testified that despite her "reservations" regarding the Debtor's reliability, she never monitored his activity.

### C. Section 523(a)(6) Willful and Malicious Injury

Ms. Harrold alleges that the Debtor's allegedly unauthorized use of her checking account constitutes a willful and malicious injury to her property, and as such, the Debtor's unauthorized withdrawals are excepted from his anticipated bankruptcy discharge.

Section 523(a)(6) of the Code provides that a discharge in bankruptcy does not apply to any debts that arise from the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The test is conjunctive; thus, a willful injury by itself is insufficient to support a cause of action unless the act was also done maliciously. *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991). Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau* v. *Geiger*, 523 U.S. 57, 60 (1998). As stated by the Court of Appeals for the Fourth Circuit:

> [Section] 523(a)(6) applies only to "acts done with actual intent to cause injury."
>
> Section 523(a)(6) is not satisfied by negligent, grossly negligent, or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

*Duncan* v. *Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006).

Thus, for an injury to be "willful," the debtor must have intended the consequences of the debtor's act. More specifically, intentional conduct occurs when a debtor knows that the consequences flowing from the complained of acts are certain, or are substantially certain to occur. *Barclays American/Business Credit., Inc.* v. *Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (adopting the definition of "intentional" as stated in *Restatement (Second) of Torts* § 8A, comment b (1965)). For an act to be "malicious," the act must be targeted at the plaintiff, at "least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* at 881. A "malicious act" is "[a]n intentional, wrongful act performed against another without legal justification or excuse." *Black's Law Dictionary* 977 (8th ed. 2004). Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue. *St. Paul Fire & Marine Ins. Co.* v. *Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

In sum, for a debt to be excepted from a debtor's discharge pursuant to § 523(a)(6), the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious.

The facts contained in the record fall short of demonstrating that the Debtor willfully and maliciously injured Ms. Harrold's property when he took the funds in her bank account for personal uses. As Ms. Harrold stated, she intended to use some of the funds from her account to make gifts to her children; the Debtor was expressly authorized to make several gifts to himself and his sister. Most importantly, there is no indication in the record that the Debtor intended to ruin his mother financially; it appears he was simply acting within his ostensible rights to gift the money in her account to himself and his sister. The court also notes that the Debtor only withdrew accumulated interest from Ms. Harrold's account, and he sustained the principal amount of Ms. Harrold's investment account. That act is inconsistent with a finding of malicious intent.

### D. Section 727(a)(4) Denial of Discharge

Ms. Harrold seeks to deny the Debtor a discharge of any debts based on a statement the Debtor made in his bankruptcy petition. The statement was that the Debtor owed Huntington

Bank a $39,830 unsecured debt when no such debt was owed. The Debtor did owe Huntington Bank approximately $40,000 in secured debt, which was properly listed on his schedules of secured debts.

Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . (4) the debtor knowingly and fraudulently, or in connection with the case – (A) made a false oath or account . . . ." 11 U.S.C. § 727(a)(4)(A). "[T]o deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *Keeney* v. *Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

The record contains little to no evidence demonstrating that the Debtor made the false statement that he owed Huntington Bank an unsecured debt of $39,830 with a fraudulent intent, or that such misstatement related materially to his bankruptcy case. The court finds that the statement was due to simple clerical error. Therefore, the court will deny relief on Ms. Harrold's § 727(a)(4)(A) cause of action.

## I. CONCLUSION

For the above-stated reasons, the court will not except the debt owed to Ms. Harrold from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), or (6). The court also finds no grounds upon which to deny the Debtor a discharge pursuant to 11 U.S.C. §727(a)(4). The court will enter a separate order dismissing Ms. Harrold's complaint.